UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. **6:18-CV-00841-RBD-TBS**

JESSE TACORONTE
                    Plaintiff

v.

SPECIALIZED LOAN SERVICING, LLC.
                    Defendant
_____/

**PLAINTIFF JESSE TACORONTE'S
FIRST AMENDED COMPLAINT**

The following First Amended Complaint is filed pursuant to leave granted by the Court in its Order of June 22, 2018 ( Doc 10).

Plaintiff, Jesse Tacoronte, sues Defendant SPECIALIZED LOAN SERVICING, LLC of 8742 Lucent Boulevard, Suite 300, Highland, CO 80129 (Also Known As "SLS" of PO Box 636007, Littleton CO 80163, and for the complaint alleges:

**Nature of the Action**

1. This is a complaint for money damages. Defendant, despite knowing that Plaintiff was represented by counsel, went around that counsel, all in an effort to collect a debt and contrary to the provisions of Fla. Stat. § 559.72(18) and

1

15 U.S.C. § 1692c(a)(2), for which reason Plaintiff is entitled to statutory damages of $2000.00 and actual damages as determined at trial.

## Parties

2. Plaintiff is a citizen of Osceola County, Florida.

3. Defendant is a for- profit corporation incorporated in Delaware and having its primary place of business at 8742 Lucent Blvd, suite 300, Highlands Ranch, CO 80129.

## Jurisdiction and Venue

4. This Court has jurisdiction to grant relief pursuant to Fla. Stat. § 34.01(1)(c), in that this was an action for money damages brought I the small claims division of the County Courts of Florida wherein the matter in controversy did not exceed $15,000.00 exclusive of interest, costs, and attorney's fees. The case has now been removed by Defendant to this court.

5. Venue is proper in the Middle District of Florida, as Plaintiff resides in Osceola County, and the violations alleged occurred in Osceola County Fl and Defendant is doing business in Osceola County.

## General Facts

6. Defendant is the alledged agent and servicer for the current Plaintiff in the law suit to collect and foreclose on a Promissory Note and Mortgage signed by Plaintiff

herein in that suit captioned: *Citigroup Mortgage Loan Trust et al vs. Jesse E. Tacaronte, Trustee,* 2018 CA 1503 7056-34, 17-02209-1, 13th Judicial Circuit of Florida, Hillsborough County. (hereinafter referred to as the foreclosure suit).

7. Defendant is the successor servicer to Defendant having taken over and been assigned the duties and role of servicer by Bank of America, NA. In the transfer of the duties as servicer, the Defendant took direct possession of all documents, letters, notices and papers and legal pleadings contained in the servicer file maintained by Bank of America NA in it's role as the immediate prior servicer for the named Plaintiff in the foreclosure suit.

8. Defendant, as successor servicer has actual knowledge of all documents, notes, letters and notices contained in the servicer's file transferred to it by Bank of America, NA.

10. Defendant is a "debt collector" within the meaning of Fla. Stat. § 559.55(6) and Fla. Stat. § 559.551 & seq. (the Florida Consumer Collection Practices Act, or FCCPA), in that it uses an instrumentality of commerce within this state, to wit, the U.S. mail, in a business the principal business of which is the collection of debts owed to others.

11. Defendant is a "debt collector" within the meaning of Fla. Stat. § 559.55(6) in that it regularly attempts to collect debts allegedly owed to others.

12. Defendant is also a "debt collector" within the meaning of 15 U.S.C. § 1692a (6), and 15 U.S.C. § 1601-note & seq. (the Fair Debt Collection Practices Act, or FDCPA), in that it uses the mails in a business the primary purpose of which is the collection of debts.

13. Plaintiff executed a Note, a copy of which is furnished as Exhibit 1 hereto, obtaining a personal loan for household purposes and the funding of a personal second-owner home. This action arises from Defendant's attempt to collect on that Note.

14. Defendant has sued Plaintiff in Florida Court to collect on said Note and Plaintiff is represented by counsel in that suit, namely the foreclosure suit cited above. Notice of such representation has been provided to Defendant on several occasions prior to the collection letter set out in paragraph 15 hereof.

15. On December 18, 2017, Defendant sent a debt collection communication letter directly to Plaintiff at his personal address despite Defendant knowing that he was represented by counsel regarding this debt. Said communication contained demands for payment of money, legal fees and penalties not owed by Plaintiff. A copy of the letter is furnished as Exhibit 2 hereto.

16. Defendant alleged in said communication (Exhibit 2) that a certain amount was due by Plaintiff which Defendant based on records and representations from prior

4

servicers of the Plaintiffs account. Said communication also included expenses for legal actions and foreclosure expenses Plaintiff did not owe.

17. Defendant has also caused direct communications to collect the Note debt to be hand-delivered to Plaintiffs property in the form of multiple letters directed to Plaintiff and demanding that Plaintiff respond to such communications by directly contacting and telephoning the Defendant to resolve and pay the alleged debt. (A copy of said communication is attached as Exhibit 3)

18. Plaintiff suffered mental anguish and anxiety as a result of the threats and communications the Defendant continued to make on him despite the Defendant knowing he was represented by an attorney.

20. De3fendants actual knowledge of the fact that Plaintiff was represented by counsel and had been instructed not to contact Plaintiff directly was derived from the written letter from attorney Tanner Andrew in the Defendants records. ( Exhibit 4)

21. Plaintiff employed the law firms of Tanner Andrews in State Court prior to removal and J. Marshall Gilmore, PA to bring this suit and has incurred attorney fees for which he seeks judgment against Defendant pursuant to both the FDCPA and the FCCPA.

## COUNT 1

22. Plaintiff realleges paragraphs 1 through 21.

23. On and before the date of December 18, 2017, Defendant had actual knowledge that Plaintiff was represented by counsel because Defendant had been informed of the status of the foreclosure litigation wherein counsel for Plaintiff had filed notice of representation in court records and sent written notice to Defendant's predecessor, Bank of America, NA. When Defendant assumed the file as part of its assignment and resumption as servicer it fully reviewed all documents and communications in the existing file Defendant assumed responsibility for.

24. The sending of the December 18, 2017 (Exhibit 2) letter and written communications delivered directly to Plaintiffs property(Exhibit 3) were a violations of Fla. Stat. § 559.72(18) and (9) by representing the debt included unfounded attorney fees, legal expenses and foreclosure expenses, it misrepresented the extent and characteristics of the debt and communications going around counsel.

25. Fla. Stat. § 559.77(2) provides for statutory damages of $1000.00, together with attorney fees and costs, for a violation of any portion of Fla. Stat. § 559.72.

**Wherefore, premises considered**, Plaintiff demands

(a) statutory damages of $1000.00 for the sending of the described letters and communications in violation of the FCCPA;

(b) reasonable attorney fees and costs; and

(c) such other relief as may be just.

# COUNT 2

26. Plaintiff realleges paragraphs 1 through 21.

27. On December 18, 2017, DEFENDANT had actual knowledge that Plaintiff was represented by counsel because Plaintiff had filed in open court records notice of representation by counsel in litigation by Defendant to collect on the Note and Defendant had the complete collection file on this debt which contained the notice letter(Exhibit 4) .

28. The sending of the December 18, 2017 letter communication was a violation of 15 U.S.C. § 1692c(a)(2) and e(2)(A) by going around counsel. ( "FDCPA")

29. 15 U.S.C. § 1692k(a)(2)(A) provides for statutory damages of $1000.00, and also 15 U.S.C. § 1692k(a)(3) provides for an award of fees and costs, for FDCPA violations.

**Wherefore**, premises considered, Plaintiff demands:

(a) statutory damages of $1000.00 for the sending of the December 18, 2017 letter communication in violation of the FDCPA;

(b) fees and costs; and

(c) such other relief as may be just.

## COUNT 3

30. Plaintiff realleges paragraphs 1 through 21.

31. On December 18, 2017, DEFENDANT had actual knowledge that Plaintiff was represented by counsel because Plaintiff had filed in open court records notice of representation by counsel in litigation by Defendant to collect on the Note and Defendant had the complete collection file on this debt which contained the notice letter (Exhibit 4).

32. The sending of the December 18, 2017 letter communication was a violation of 15 U.S.C. § 1692c(a)(2) and e(2)(A) by misrepresenting the debt amount and status and character as including unwarranted attorney fees costs. ( "FDCPA")

33. 15 U.S.C. § 1692k(a)(2)(A) provides for statutory damages of $1000.00, and also 15 U.S.C. § 1692k(a)(3) provides for an award of fees and costs, for FDCPA violations.

**Wherefore**, premises considered, Plaintiff demands:

(a) statutory damages of $1000.00 for the sending of the December 18, 2017 letter communication in violation of the FDCPA;

(b) fees and costs; and

(c) such other relief as may be just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims and counts triable by a jury in the State of Florida and under Florida laws.

        Respectfully submitted,

        __S/J. Marshall Gilmore_____

        J. Marshall Gilmore, PA
        Fla. Bar #840181
        125 East Merritt Island Cswy
        Suite #107-340
        Merritt Island, FL 32952
        Tele (321) 591-9922
        mgilmore@mgilmorelaw.com
        *Counsel for Jessie Tacoronte,*
        *Plaintiff*

## Certificate of Service

I certify that a true and correct copy of the foregoing was served via cm/ecf email service on the opposing counsel in this matter and via direct email to Frank Morreale at frank.morreale@nelsonmullens.com this June 28, 2018

*S/ J. Marshall Gilmore*

Attorney for Plaintiff

Loan Number: 0102622115 - 9608

# ADJUSTABLE RATE INTEREST ONLY NOTE
## (LIBOR Index - Rate Caps)

THE STATE DOCUMENTARY TAX DUE ON THIS NOTE HAS BEEN PAID AND THE PROPER STAMPS HAVE BEEN AFFIXED TO THE MORTGAGE

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| September 28, 2006 | White Plains | NY |
|---|---|---|
| [Date] | [City] | [State] |

12726 ADVENTURE DRIVE, RIVERVIEW, FL 33569
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 211,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Argent Mortgage Company, LLC**.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.400 %. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**
I will make my monthly payments on the first day of each month beginning on November 1, 2006. Before November 1, 2011 my monthly payment will consist only of interest due on the unpaid principal of the Note. Thereafter, beginning on November 1, 2011, I will pay principal and interest by making a payment each month as set forth below. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before principal. If, on **October 1, 2036**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the maturity date.

I will make my payments at: **505 City Parkway West, Suite 100, Orange, CA 92868**
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 1,477.00, which is equal to only the interest due each month on the unpaid principal at the rate described in Section 2 of this Note. This monthly payment may change due to interest rate adjustments in accordance with Section 4 of this Note or if I make any partial prepayment as set forth in Section 5 of this Note.

**(C) Date of First Principal and Interest Payment**
Each of my monthly payments beginning on November 1, 2011, will be equal to an amount sufficient to repay the Principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. This monthly payment may change due to interest rate adjustments determined as described in Section 4 of this Note.

**(D) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**
The interest rate I will pay may change on the first day of October, 2008, and on that day every six month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street . ' of the date 45 days before the Change Date is called the "Current I
If at any point in th [barcode] r will choose a new index that is based upon comparable informa ce.

610 073803534 N 001 001

Initials:

201-1FLA-INT(082006) Rev. 01

09/28/2006 6:20:44 AM

Exhibit 1

Loan Number: 0102622115 - 9608

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage point(s) ( 6.000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. For Change Dates during the Interest Only period the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay only the interest which accrues on the unpaid principal of my loan at my new interest rate. For Change Dates after the Interest Only period ends, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance that I am expected to owe at the Change Date in Full on the Maturity Date at my new interest rate in substantially equal payments. The results of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.400 %** or less than **8.400%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One** percentage point(s) **1.000%**) from the rate of interest I have been paying for the preceding **six** months. My interest rate will never be greater than **14.400 %** or less than **8.400 %**.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. PREPAYMENT PRIVILEGE**
I may prepay all or any part of the principal balance of this Note in accordance with the terms of this Section without incurring a prepayment charge. A "prepayment" is any amount that I pay in excess of my regularly scheduled payments of interest or of principal and interest that the Lender will apply to reduce the outstanding principal balance on this Note in accordance with this Section.

**(A) Application of Funds**
I agree that when I indicate in writing that I am making a prepayment, the Lender shall apply funds it receives in accordance with the order of application of payments set forth in Section 2 of the Security Instrument.

**(B) Monthly Payments**
If a partial Prepayment is made during the period when any monthly payment consists only of interest, the amount of the monthly payment will decrease for the remainder of the interest only period as well as during the period when monthly payments include both principal and interest, however, the payment reduction may be offset by any increase in the interest rate as described in Section 4 of this Note. If the partial prepayment is made during the period when my payments consist of principal and interest, the amount of my monthly payment will not decrease, however, the principal and interest required under this Note will be repaid prior to the Maturity Date.

**6. LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces the principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payment**
If the Note Holder has not received the full amount of any monthly payment by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of interest or principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is delivered or mailed to me.

201-2FLA-INT(062006) Rev. 01  2 of 3  Initials:

06/28/2006 6:20:44 AM

Loan Number: 0102622115 - 9608

**(D) No Waiver by Note Holder**
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8. GIVING OF NOTICES**
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**
I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**
This Note is a uniform instrument with limited variations in some jurisdictions. In addition, to the protections given to the Note Holder under this Note, A Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That the Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without the Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonable determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition of Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Oral agreements, promises or commitments to lend money, extend credit, or forbear from enforcing repayment of a debt, including promises to extend, modify, renew or waive such debt, are not enforceable. This written agreement contains all the terms the Borrower(s) and the Lender have agreed to. Any subsequent agreement between us regarding this Note or the Instrument which secures this Note, must be in a signed writing to be legally enforceable.**

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ 9/28/06 (Seal)
Borrower JESUS E TACORONTE

_____ (Seal)
Borrower

PAY TO THE ORDER OF
WITHOUT RECOURSE
ARGENT MORTGAGE COMPANY, LLC (Seal)
BY: _____
SAM MARZOUK, PRESIDENT

BY: _____ (Seal)
GREGORY S HANSON, C.F.O.

201-3FLA-INT (05/2006) Rev. 01    3 of 3    09/28/2006 8:20:44 AM

# ▪▪SLS

8742 Lucent Boulevard, Suite 300, Highlands Ranch, CO 80129

JESUS E TACORONTE
2941 TINDALL ACRES RD
KISSIMMEE, FL 34744-9235

003218

To obtain information about your account, contact SLS at:
1-800-306-6062 or visit our website at www.sls.net. SLS
accepts calls from relay services on behalf of hearing impaired
borrowers.

**Mortgage Statement**
Statement Date: 03/19/

| Account Number | 100934891 |
| --- | --- |
| Payment Due Date | 04/01/1 |
| **Total Amount Due‡** | **$177,633.6** |

The reinstatement amount listed above is as of 03/19/2018. Please no
additional interest and charges may be incurred after this date.
payment is received after 04/16/18, $0.00 late fee will be charged.

Property Address
12726 ADVENTURE [
RIVERVIEW, FL 335

| | |
| --- | --- |
| Outstanding Principal | $204,719.99 |
| Escrow Balance | $-80,035.77 |
| Suspense | $0.00 |
| Deferred Principal | $0.00 |
| Deferred Interest | $0.00 |
| Other Deferred Amounts | $0.00 |
| Interest Rate (Until 04/01/2018) | 8.40000% |
| Prepayment Penalty | No |

| | |
| --- | --- |
| As of Date | 03/19/201 |
| Accelerated Amount | $368,762.4 |
| Total New Fees Charged | $3,102.0 |
| Past Due Amounts | $174,531.6 |
| Suspense | $0.0 |
| **TOTAL AMOUNT DUE‡** | **$177,633.6** |

The reinstatement amount listed above is as of 03/19/2018. Please note addition
interest and charges may be incurred after this date. To receive an update
reinstatement amount, please contact SLS at the number listed above. Please no
that the amount disclosed is not a payoff amount. To reinstate the account, certifie
funds are required.

| | Paid Last Month | Paid Year to Date |
| --- | --- | --- |
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (Taxes and Insurance) | $0.00 | $0.00 |
| Fees/Charges/Optional Product | $0.00 | $0.00 |
| Suspense | $0.00 | $0.00 |
| Total | $0.00 | $0.00 |

You are currently due for the 03/01/14 payment.

*Suspense: Any partial payments that you make are not applied to your mortgage,
but instead are held in a suspense account. If you pay the balance of a partial
payment, the funds will then be applied to your mortgage. However, if the loan is
in foreclosure, unless funds are received pursuant to an agreed upon loss
mitigation program, any additional funds received will be returned to you.

Your loan is past due. Please call today at 1-800-306-6062 to make arrangements.

‡Amount to reinstate your loan: The reinstatement amount listed above is as
of "As Of Date". Please note additional interest and charges may be incurred
after this date. To receive an updated reinstatement amount, please contact SLS
at the number listed above. Please note that the amount disclosed is not a payoff
amount. To reinstate the account, certified funds are required.

**If You Are Experiencing Financial Difficulty:** You may contact the U.S.
Department of Housing and Urban Development (HUD) for a list of
homeownership counselors or counseling organizations in your area, call
1-800-569-4287 or go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

You are late on your mortgage payments. Failure to bring your loan
current may result in fees and foreclosure - the loss of your home. As of
March 19, 2018 you are 1479 days delinquent on your mortgage loan.

Your loan is in foreclosure, the first notice or first legal filing has been
completed on your loan.

Recent Account History

Past due amount as of 10/01/17: $153,627.02
Payment due 11/01/17: Amount Due $2,213.39
Payment due 12/01/17: Amount Due $2,213.39
Payment due 01/01/18: Amount Due $2,213.39
Payment due 02/01/18: Amount Due $2,213.39
Payment due 03/01/18: Amount Due $2,213.39
04/01/18: Current Payment Due $2,213.39
Total Unpaid Fees, Charges, and Uncollected Escrow Amount: $12,939.65
Total $177,633.62 due. You must pay this amount to reinstate your loan
as of 03/19/2018.‡

| Date | Description | Total | Interest | Principal | Escrow (for Taxes and Insurance) | Optional Product | Fees/Charges | Suspense |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 03/06/18 | Fees Billed PROP PRESERVE ABANDON R | 200.00 | 0.00 | 0.00 | 0.00 | 0.00 | 200.00 | 0.0 |
| 03/14/18 | Fees Billed FORECLOSURE EXPENSE | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 100.00 | 0.0 |

Transaction history continued on page 3

**PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION AND DISCLOSURES.**

142SLP0002

Exhibit 2

**MONTHLY PAYMENT NOTICE**

142SL0101.MICRRegMid.el.d.1471/003218/003:

| | |
| --- | --- |
| SPECIALIZED LOAN SERVICING LLC<br>PO BOX 636007<br>LITTLETON, CO 80163-6007 | Make checks payable to: Specialized Loan Servicing LLC<br>☐ Check if your address has changed and<br>fill out form on reverse side, signature required. |

LOAN NUMBER: 1009348913
DATE: 03/19/18

12726 ADVENTURE DR
RIVERVIEW, FL 33579

Please contact SLS at 1-800-306-6062 for a full reinstatement quote.

**■■SLS**

| Date | Description | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 03/15/18 | Fees Billed ATTORNEY EXPENSE | 690.00 | 0.00 | 0.00 | 0.00 | 0.00 | 690.00 | 0.00 |
| 03/15/18 | Fees Billed FORECLOSURE EXPENSE- FI | 2013.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2013.00 | 0.00 |
| 03/15/18 | Fees Billed LEGAL ACTION - LIS PEND | 9.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9.00 | 0.00 |
| 03/15/18 | Fees Billed PROPERTY PRESERVATION E | 75.00 | 0.00 | 0.00 | 0.00 | 0.00 | 75.00 | 0.00 |
| 03/01/18 | Fees Waived PROP INSPECTION FEE | -11.35 | 0.00 | 0.00 | 0.00 | 0.00 | -11.35 | 0.00 |
| 03/01/18 | Fees Waived PROP INSPECTION FEE | -3.65 | 0.00 | 0.00 | 0.00 | 0.00 | -3.65 | 0.00 |
| 03/09/18 | Fees Billed PROP INSPECTION FEE | 15.00 | 0.00 | 0.00 | 0.00 | 0.00 | 15.00 | 0.00 |



142SL0101.MICRRegMid.cl.d.1471/003218/003390/i

142SLP0002

## *Notice to Call*

Dear Borrower:

Date:_____

At the request of SPECIALIZED LOAN SERVICING, LLC, an independent field inspector came by to inspect the condition of the property

Please contact your mortgage servicer at:

**(866) 391-3076**

Thank you

---

## *Aviso Urgente*

Estimado Prestatario:

Fecha: _____

A petición de SPECIALIZED LOAN SERVICING, LLC, un inspector de campo independiente vino a inspeccionar el estado de la propiedad

Póngase en contacto con su administrador hipotecario en:

**(866) 391-3076**

Gracias

Exhibit 3

Bank of America Home Loans,
P.O. Box 5170,
Simi Valley, CA 93062.

Tanner Andrews,
Tanner Andrews, P.A.,
112 W. New York Ave., #203,
P.O. Box 1208,
DeLand, FLA 32721.

11-Jul-2014

Dear Sirs:

Certified mail 7011 2970 0001 7301 3240, return receipt requested.

Refs: your ac# 873885067; property at 12726 Adventure Dr, Tampa; yours of 16-May-2014.

I represent Jesus E. Tacoronte with regard to the above-referenced matter. I also represent his wife.

To hand yours above-referenced, being a monthly loan statement. Mr. Tacoronte dispute the debt. Particularly, you should be aware that: your claimed amount is patently wrong; the debt is time-barred; you are not the original creditor; and you do not appear to own the debt. I would also point out that this debt was recently litigated, successfully from Mr. Tacoronte's point of view, in Hillsborough case #2008-CA-12165.

You must therefore obtain verification of the debt from the original creditor and furnish a copy of the same. You are also required to furnish the name and address of the original creditor.

Mr. Tacoronte also requires validation of the debt, showing all charges, payments, and credits on the account since origination or the last zero balance. In light of the tenuous ownership claims asserted by many securitized mortgage pools, and considering that you are probably a mere servicer, your validation of the debt should also include the chain of title leading to your client or your claimed creditor, as well as documentation showing the connection between the actual owner of the debt and the various servicing entities.

If you have reported any information about this debt to third parties, including credit reporting services, you are required to furnish the names and address of those entities to whom you have reported information about this debt. You are also required to inform all such entities that the debt is disputed. Let me know when you have done so.

Do not telephone my client. Do not contact any other persons about the debt. You must direct all communications intended to reach my client through this office. You must, of course, inform your client and any of the client's principals that the debt is disputed and that the Tacorontes have representation.

Thank you for your attention to these matters.

Yours,

Tanner Andrews
Fla. Bar #21426

CC: Jesus E. Tacoronte

Exhibit 4

@(#)7056-tac-bofa-1402.txt 1.0 11-Jul-2014                                                                                   page 1

tmac.ta3: base(3.01, 01-May-2016); letter(3.0c, 07-Dec-2010)